[No. 6800–1–II.   Division Two.   August 20, 1985.]

THE STATE OF WASHINGTON, *Appellant*, v. JIMMIE
EARL YORK, *Respondent*.

*C. Danny Clem, Prosecuting Attorney,* and *Gregg Johnsen, Deputy,* for appellant.

*Mark L. Yelish,* for respondent (appointed counsel for appeal).

PETRICH, J.—The State appeals the trial court's grant of a new trial based upon newly discovered evidence, CrR 7.6(a)(3), which was a recantation by the 9–year–old victim in an indecent liberties case. The State's primary contention is that the court abused its discretion in granting a new trial upon a finding that defendant's conviction was based "solely" upon the recanting witness' trial testimony, while refusing to find whether the recanting witness had perjured herself at defendant's trial. We hold that the trial court's finding that defendant's conviction was based solely upon the recanted testimony is supported by the record and that the trial court correctly declined to determine whether the recanting witness perjured herself. Accordingly, we find no abuse of discretion in granting the motion for new trial, and affirm.

On September 17, 1982, the defendant was convicted by a jury of two counts of indecent liberties. The evidence at trial established that the defendant, a 38– to 40–year–old male, had lived for 2 years with Mary Doe[1] and her two daughters, ages 9 and 7. In March 1982, Ms. Doe had a son by the defendant. On July 2, 1982, Ms. Doe had just returned home when she walked down the hallway toward the bedroom she shared with defendant and saw through the slightly opened bedroom door her 9–year–old daughter, Louise, jump off the bed and run into the closet. The defendant was lying on the bed, fully clothed, and on top of the covers. Ms. Doe opened the closet door, noted that Louise seemed frightened and was holding her pants, and asked her what she had been doing. Without waiting for a response, Ms. Doe jumped on the bed and angrily grabbed the defendant by the throat because she felt that he had been "messing around" with Louise. She then told the defendant to get out and that she was going next door (to an available telephone) and call the police. She did so, and while she was contacting the police, defendant left. Ms. Doe returned shortly and took Louise to a hospital for an examination.

At the hospital, Louise was interviewed by Sheriff's Deputy Wagner. She told him that the defendant had placed his hands on her genital area outside her pants while they were on the bed, and that similar incidents had previously occurred six or seven times. Sheriff's Detective Magerstaedt also interviewed Louise, and was told of incidents occurring "every other day" where the defendant had rubbed her vaginal area with his hands, both inside and outside her pants. She also told him that the defendant threatened to spank her or tell her mom lies about her if she did not do what he wanted. Louise told both the prosecutor and defense attorney that four incidents of sexual touching had occurred.

---

[1]Fictitious names have been assigned to the victim and her family to preserve anonymity.

Louise testified at trial. She identified her vaginal area as a "cushy box," and said the defendant had previously touched her there, inside her pants, and that he had once tried to insert his finger. She also said the defendant told her not to tell anyone or he would get her in trouble with her mother. As to the July 2 incident, Louise related that she and the defendant had been in her mother's bedroom with no one else present, her mother having left to walk some children home. She stated that she was lying on the bed with the defendant and he was starting to feel her genital area with his hands. She indicated that the door was only partway open and that he was beginning to put his hands inside her pants when they were discovered by her mother. Louise indicated that her mother was angry when she arrived, and that Louise jumped off the bed and ran into the closet because she was afraid she would get into trouble with her mother. On cross examination, Louise stated that four incidents of sexual touching had occurred before the July 2 incident, and that she had lied to the investigating officers as to the number of incidents of touching and about the defendant's attempt to insert his finger.

The defendant testified and denied any incidents of sexual touching, and stated that when he left the home on July 2, he did not know why Ms. Doe was so angry with him. As to the July 2 incident, he stated he had been lying on the bed half asleep with his eyes closed. He was aware that Louise was in the room, but not that she was on the bed. When Ms. Doe burst into the bedroom, he did not know why Louise was in the closet. On rebuttal, the friend with whom the defendant went to stay after leaving the apartment on July 2 stated that the defendant had told him the reason Ms. Doe was so angry at the defendant was because she suspected the defendant had been sexually abusing Louise.

On October 18, 1982, a month and a day following his conviction, defendant moved for a new trial on the grounds that Louise had recanted her previous statements and tes-

timony. At the hearing on this motion, Louise testified that she had not told the truth at trial and that she was now recanting all of her previous statements that defendant had sexually touched her. She stated that on July 2, she and the defendant had been lying on the bed, but that the defendant had only hugged her. On cross examination, Louise indicated that her mother had first discussed with her the fact that the defendant may go to prison, and that her mother did not want him to go to prison, before her mother had asked her whether she was certain about her testimony at trial.

Ms. Doe testified at the hearing that she had visited the defendant several times at the county jail. She admitted receiving two letters from him asking her to get Louise to "tell the truth" about his not taking any indecent liberties with her. However, she stated that she first talked to Louise about the accuracy of her trial testimony before receiving either letter from the defendant, and only because Louise was experiencing nightmares thought to be connected with her damaging trial testimony.

On appeal, the State contends first that the court erred by failing to enter a finding as to the timeliness of defendant's motion for new trial. At the time pertinent to this action, CrR 7.6(b) provided, "a motion for new trial must be served and filed within 5 days after the verdict or decision. The court on application of the defendant or on its own motion may in its discretion extend the time." Here, although the motion was clearly not brought within the 5–day time limit prescribed by the rule, it is clear that the court did not believe the time limit to be appropriate in this case because the newly discovered evidence (recanted testimony) had not been discovered until the time limit had expired. Thus, we are satisfied that the court properly exercised its discretion under CrR 7.6(b) to extend the time limit and consider the merits of the motion.

We now address whether the court erred in finding that defendant's conviction was based "solely" upon the recanting witness' trial testimony, and refusing to find whether

this witness had perjured herself at the trial.

On a motion for a new trial based upon newly discovered evidence, the following five requirements must be met before a new trial will be granted: (1) the evidence must be such that the results will probably change if a new trial was granted; (2) the evidence must have been discovered since the trial; (3) the evidence could not have been discovered before the trial by exercising due diligence; (4) the evidence must be material and admissible; and (5) the evidence cannot be merely cumulative or impeaching. *State v. Williams,* 96 Wn.2d 215, 223, 634 P.2d 868 (1981); *State v. Davis,* 25 Wn. App. 134, 138, 605 P.2d 359 (1980). A trial court's ruling on a motion for new trial will not be disturbed absent a manifest abuse of discretion, and a much stronger showing of abuse of discretion is ordinarily required to set aside an order granting a new trial than one denying new trial. *Moore v. Smith,* 89 Wn.2d 932, 942, 578 P.2d 26 (1978); *Barth v. Rock,* 36 Wn. App. 400, 402, 674 P.2d 1265 (1984).

Where independent evidence corroborates the testimony that a witness later seeks to recant, the grant of a new trial rests within the sound discretion of the trial judge. *State v. Rolax,* 84 Wn.2d 836, 529 P.2d 1078 (1974); *State v. Hayden,* 28 Wn. App. 935, 627 P.2d 973 (1981). However, "[w]hen a defendant is convicted *solely* on the testimony of the now recanting witness, this court has squarely held that it is an abuse of discretion not to grant a new trial." *State v. Rolax,* 84 Wn.2d at 838, citing *State v. Powell,* 51 Wash. 372, 98 P. 741 (1909). Here, in granting the motion for new trial, the trial court found that defendant's conviction rested solely upon the testimony of Louise and that her recantation met all of the five criteria of *State v. Williams, supra; State v. Davis, supra.* The State challenges these findings. The trial court expressly declined the State's request to enter a finding as to whether Louise had perjured herself at the trial, stating on the record that case law prevented the court from making such a finding.

In granting the motion for new trial, the trial court

was required to enter "definite reasons of law and facts." CrR 7.6(d); *State v. Williams, supra.* Appellate review of the trial court's factual findings is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings in turn support the court's conclusions of law. *Goodman v. Darden, Doman & Stafford Assocs.,* 100 Wn.2d 476, 670 P.2d 648 (1983). We agree with the trial court's statement on the record that Louise's testimony was "crucial and absolutely necessary to prove the allegations in the information." Although the record contains some evidence that slightly corroborated Louise's trial testimony, there was no direct evidence of the crime of indecent liberties other than Louise's testimony, and certainly no "independent corroborative evidence" that by itself would "justify a conviction and penal sentence." *State v. Powell,* 51 Wash. at 374; *see State v. Rolax,* 84 Wn.2d at 838. Thus, the record supports the court's finding that defendant's conviction rested solely upon Louise's testimony.

We also believe the record supports the court's findings with respect to the requisite criteria for granting a new trial. Louise's direct recantation clearly supports the finding that the result of a new trial would probably be different. Further, both Louise's recantation and the testimony of her mother at the hearing on the motion for new trial support the court's finding that Louise's recantation could not have been discovered by defendant before trial with the exercise of due diligence. Finally, the recantation is clearly not merely cumulative or impeaching. In light of the fact that the record supports each of the challenged findings, we cannot say that the court manifestly abused its discretion in concluding that a new trial was warranted. As previously noted, once a trial court determines a conviction was based solely upon the testimony of a recanting witness, it is an abuse of discretion not to grant a new trial. *State v. Rolax, supra; State v. Powell, supra.*

■ We also disagree that the trial court was required to find that Louise perjured herself at defendant's trial as a

prerequisite to granting a new trial because of her recantation. The State argues that a trial court should make such a determination because the jury in a new trial would not be able to weigh the credibility of the recantation as opposed to the original testimony. This argument "would permit a trial judge to invade the jury's fact–finding function" and "virtually inject the trial judge as a thirteenth juror permitting that judicial officer to independently determine credibility and weigh evidence." *State v. Williams,* 96 Wn.2d at 227; *see also State v. Ramel,* 65 Wn.2d 326, 327, 396 P.2d 988 (1964) (court upheld the granting of a new trial where the trial court did not pass on the credibility of the newly discovered evidence, but stated only that the newly discovered evidence, *if believed by the jury,* would exonerate the conviction); *Thompson v. Grays Harbor Comm'ty Hosp.,* 36 Wn. App. 300, 311, 675 P.2d 239 (1983) (witness credibility is exclusively a matter for the jury). Further, the State is not precluded as it argues from presenting to the jury in a new trial all of the evidence presented at the first trial, including Louise's original trial testimony, as substantive evidence. ER 801(d)(1)(i), & comment. Thus, we disagree that the trial court was required to weigh the credibility of the recantation as compared to the original trial testimony.

Moreover, although in *State v. Rolax,* 84 Wn.2d at 838, the Supreme Court remanded for the trial court to "determine whether the [recanted] testimony was, in fact, perjured and, if so, whether the jury's verdict of guilty was likely to be influenced thereby", such remand was only because the *Rolax* court could not determine from the record in that case whether the defendant was convicted solely upon the recanted testimony or whether independent corroborative evidence existed. Here, however, the record supports the trial court's findings that the conviction rested solely upon the recanted testimony and that no independent corroborative evidence existed to support the conviction. Thus, the trial court properly granted the motion for new trial and properly left to the jury in the new trial the

issue of the credibility of the recantation and the original trial testimony. *State v. Rolax, supra; State v. Powell, supra.*

The jury at the trial did not have the facts before it that the witness had made sworn statements contrary to her testimony. The witness made such sworn statements afterwards. It is true she testified that she had stated when not under oath that she had never had sexual intercourse with the appellant, but it is not uncommon for persons to deny such things when not under oath and afterwards, when they are on oath, admit the fact. Such witnesses may be worthy of belief, but it is rare that any person will testify to a truth and subsequently testify that such testimony was false. The evidence of such witnesses, uncorroborated in essential facts, ought to be received with caution, to say the least, and a man ought not to be sent to the penitentiary *until a jury has had an opportunity to pass upon it,* which has not been done here. No injustice can be done upon a new trial. New trials have frequently been granted upon the showing made in this case.

(Italics ours.) *State v. Powell,* 51 Wash. at 374–75. We find no error in the court's refusal to find whether the recanting witness perjured herself at defendant's trial and no abuse of discretion in granting the motion for new trial.

The order granting a new trial is affirmed.

ALEXANDER, J., concurs.

WORSWICK, C.J., concurs in the result.