[No. 25814-1-I.   Division One.   December 14, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. NATHANIEL GILBERT CRAVEN, *Appellant*.

*Constance Marie Krontz* and *Scott Busby* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Bruce Miyake, Deputy,* for respondent.

SCHOLFIELD, J. — Appellant Nathaniel Craven, a juvenile, appeals his conviction on three counts of assault in the third degree, RCW 9A.36.031(1)(a). We affirm.

### FACTS

By information dated May 4, 1989, appellant Nathaniel Craven was charged with one count of assault in the fourth degree and one count of assault in the third degree. Count 1 was based on Craven's alleged assault of John Thompson on May 2, 1989. Count 2 was based on Craven's alleged assault of Seattle Police Officers Eric Barden, John Abraham, and Rudy Gonzales, who apprehended Craven following the alleged assault. On September 15, 1989, the information was amended to allege a separate count of assault in the third degree for each officer (counts 2, 3 and 4). Following a fact-finding hearing, Craven was found guilty as charged on counts 2 through 4. This appeal followed.

## 1. State's Case.

On May 2, 1989, at approximately 1:45 a.m., Seattle Police Officers John Abraham and Rudy Gonzales responded to a report of an assault in the area of Second and Pike Street in downtown Seattle. When they arrived at the scene, the officers observed the victim on the street with a large amount of blood coming down his face. They made contact with a Mr. Chavez, who had witnessed the assault. Chavez stated that the assailant was a black male dressed in black clothing and a black jacket with a white fur collar. The assailant was accompanied by four or five other black youths.

The officers, accompanied by Chavez, drove around the immediate area in search of the suspects. When they arrived in the area of First and Pine Street, Chavez pointed out the assailant, later identified as Nathaniel Craven, in a group of approximately six other black males. Officers Abraham and Gonzales got out of their car and approached Craven, stating that he was under arrest for assault. Craven began to move away from the officers, stating that he had done nothing wrong. The officers followed, telling Craven not to run. Craven continued to move away, shouting profanities at the officers and insisting that they would not "take [him]". As Abraham moved toward Craven, Gonzales went around behind him to cut off his retreat.

When Abraham closed in, Craven swung his right arm toward him. Abraham ducked and pinned Craven's arm down against his side. Craven attempted to swing with his other arm, but Gonzales moved in and grabbed it. The officers restrained Craven and attempted to put him in handcuffs, telling him he was under arrest. However, Craven continued to struggle and yell obscenities at the officers; he also yelled to his friends for help. Craven took a "couple kicks" at Gonzales, and the three of them ended up falling to the ground.

Seattle Police Officer Eric Barden responded to the scene and observed Gonzales, Craven and Abraham "rolling around"

on the ground. Barden testified that Craven's legs were flopping around and kicking, so he knelt down on Craven's legs to restrain him. As he did so, Barden testified, he "caught one of [Craven's] feet on the right side of my head." Barden testified that the kick caused an abrasion behind his ear that bled "a little bit", and that his glasses were nearly knocked off. After further struggle, Craven was handcuffed and placed into a patrol car.

Abraham testified that the struggle lasted approximately 5 minutes. He testified that he suffered scrapes, bruises and torn clothing as a result of the struggle.

2. Defense Testimony.

Several witnesses testified on Craven's behalf, including Craven himself. Billy Shirley recounted his recollection of the incident, stating that he saw Craven "getting hit" and beat up by the police. On cross examination, the prosecutor asked Shirley what he was wearing that evening. Shirley replied that he did not remember, and the prosecutor then asked if he was wearing the same black hat and shoes that he was wearing in the courtroom. Defense counsel objected as to relevancy. The court overruled the objection, but before Shirley could answer the question, the prosecutor asked him whether he had ever heard of the Black Gang Disciples (BGD's). Defense counsel's relevancy objection was again overruled. Shirley replied that he had heard of the gang and knew that they wore black. Over additional relevancy objections, Shirley testified that although he wore black and liked the color, he was not associated with the BGD's.

Shane Brooks testified that he was with Craven on the night of the incident. On cross examination, the prosecutor asked Brooks what Craven had been wearing that night. Brooks stated that Craven was wearing a black jacket with a fur collar and could have been wearing black pants. Brooks testified that he did not remember what he was wearing that evening.

Craven testified that a lot of gang members hung out in the area of First and Pike. He stated that he had heard of the BGD's, but that particular gang did not hang around

the First and Pike area. He acknowledged that the color of the BGD's was black.

## SUFFICIENCY OF INFORMATION

Craven contends that intent to touch or strike, inflict bodily injury, or create apprehension and fear of bodily injury is an element of assault in the third degree. He contends that the information is constitutionally defective because it fails to allege the essential element of intent.

■ All essential elements of an alleged crime, whether statutory or nonstatutory, " 'must be included in the charging document in order to afford the accused notice of the nature of the allegations so that a defense can be properly presented.' " *State v. Graham*, 64 Wn. App. 305, 307, 824 P.2d 502 (1992) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991)). If, as here, the sufficiency of the charging document is not challenged until after the verdict, the charging document " 'will be more liberally construed in favor of validity . . ..' " *Graham*, at 307 (quoting *Kjorsvik*, 117 Wn.2d at 102). Where the charging document is challenged for the first time on appeal, the test for its sufficiency is as follows:

(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

(Footnote omitted.) *Kjorsvik*, at 105-06.

In pertinent part, the amended information in this case contained the following allegation of third degree assault against Craven:

### COUNT II

And I, . . . Prosecuting Attorney . . . do accuse Nathaniel Gilbert Craven, of the crime of ASSAULT IN THE THIRD DEGREE, a crime based on a series of acts connected together with Count I, which crimes were part of a common scheme or plan, committed as follows:
That the respondent Nathaniel Gilbert Craven, in King County, Washington, on or about 2 May 1989, did assault Seattle Police officer Eric Barden, a human being, with intent

to prevent and resist the lawful apprehension and detention of himself;

Contrary to RCW 9A.36.031(1)(a), . . .

Counts 3 and 4 of the information contain identical allegations regarding the alleged assaults on Officers John Abraham and Rudy Gonzales.

While the information here includes all statutory elements of third degree assault,[1] it does not include the court-implied element of intent. *See State v. Davis,* 119 Wn.2d 657, 662, 835 P.2d 1039 (1992) (fourth degree assault carries implied element of intent); WPIC 35.50.[2] The information alleges only the intent to prevent and resist lawful apprehension, not the intent element of the assault itself.

■ Craven claims that because the information lacked the intent element of third degree assault, the trial court was deprived of subject matter jurisdiction. This argument fails under the reasoning of *Kjorsvik,* where the court held that charging document deficiencies do not impact the court's jurisdiction. *See Kjorsvik,* at 107-08.

■ Craven further relies on *State v. Robinson,* 58 Wn. App. 599, 606-07, 794 P.2d 1293 (1990), *review denied,* 116 Wn.2d 1003 (1991), where the court held that a charge of fourth degree assault against a defendant had to be dismissed where the citation did not allege the intent element. The *Robinson* decision preceded several State Supreme Court decisions governing the sufficiency of charging documents. The *Kjorsvik* holding established that charging documents challenged for the first time on appeal are liberally construed

---

[1] RCW 9A.36.031(1)(a) provides:

"A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:

"(a) With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person, assaults another; . . ."

[2] WPIC 35.50, in relevant part, defines an "assault" as "an *intentional* [touching] [or] [striking] [or] [cutting] [or] [shooting] of the person or body of another, [regardless of whether any actual physical harm is done to the other person.]]" (Italics ours.) This instruction was approved in *State v. Krup,* 36 Wn. App. 454, 676 P.2d 507, *review denied,* 101 Wn.2d 1008 (1984).

in favor of validity. *Kjorsvik*, at 102. In *State v. Davis*, *supra* at 663, the court held that the term "assault" sufficiently conveys the intent element of fourth degree assault. In *State v. Hopper*, 118 Wn.2d 151, 159, 822 P.2d 775 (1992), the court held that the term "assault" conveyed the necessary element of "knowingly", and thus the information, when read liberally, contained all the essential elements of second degree assault. *See also State v. Weiding*, 60 Wn. App. 184, 188-89, 803 P.2d 17 (1991) (language "did assault" in information was sufficient to allege elements of second degree assault), *review denied*, 118 Wn.2d 1030 (1992).

The continuing validity of *Robinson* is doubtful in light of the *Davis* and *Hopper* decisions.[3] Under *Davis* and *Hopper*, the phrase "did assault" is sufficient to allege the element of intent in this case.[4] *See Davis*, at 663; *Hopper*, at 158-59.

#### EXAMINATION REGARDING GANG MEMBERSHIP

The State contends that the fact that Craven and one or more defense witnesses were in the same gang was relevant on the issue of credibility. Inquiring into gang membership, the State contends, gave it the chance to demonstrate potential witness bias. Craven asserts that the questioning had no relevance and was prejudicial.

A party has the right to cross-examine a witness to reveal bias, prejudice, or interest, and the scope of cross examination is within the discretion of the court. 5A K. Tegland, Wash. Prac., *Evidence* § 225, at 169-70 (3d ed. 1989). We have found no Washington authority directly addressing the propriety of questioning a defense witness about gang affiliation in order to demonstrate his or her bias or interest. However, an analogous situation arose in

---

[3]The court in *Hopper* acknowledged the contrary result of *Robinson* but did not overrule it. *See Hopper*, 118 Wn.2d at 159.

[4]We note that even if the charging document includes all of the essential elements of the crime, the document may be held insufficient if the defendant was actually prejudiced by its vague or inartful language. *Kjorsvik*, 117 Wn.2d at 105-06. There is no evidence of actual prejudice in this appeal, and Craven has made no claim of actual prejudice.

*State v. Blackwood*, 103 Wash. 529, 175 P. 168 (1918), where the prosecutor questioned the defendant and defense witnesses about their membership in an organization known as the I.W.W. The court found no error in the procedure, ruling that the questions bore directly on the witnesses' interest in the defendant and were relevant as to credibility. *Blackwood*, at 532.

■ In our view, it was within the trial court's discretion to permit the prosecutor to question Craven and other defense witnesses regarding their clothing and possible gang membership. Chavez had told police officers the assailant was wearing black clothes and there was evidence that black was the color of the BGD's. The possibility that Craven and other defense witnesses were in the same gang justified questions about gang membership for impeachment purposes. Moreover, we see nothing to indicate the questions prejudiced Craven. Neither he nor the other defense witnesses admitted membership in the BGD's. This case was tried to the court, and the trial judge made no mention of gang membership in his findings.

### SUFFICIENCY OF EVIDENCE

■ Craven contends there was insufficient evidence to sustain a finding that he assaulted Officer Barden as alleged in count 2 of the amended information. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, at 201. A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. *Salinas*, at 201.

■ There is ample evidence that Craven, in struggling with the officers attempting to arrest him, acted "[w]ith intent to prevent or resist . . . the lawful apprehension or detention of himself . . .". *See* RCW 9A.36.031(1)(a). The only issue is whether sufficient evidence was presented that Craven assaulted Officer Barden.[5] Barden testified that when he arrived at the scene, Craven, Gonzales and Abraham were struggling on the ground. Craven's legs were flopping around and he was kicking. Barden "had the notion to kneel down on [Craven's] legs to restrain him." Barden stated that he then "caught one of [Craven's] feet on the right side of my head." The blow was of sufficient force to cause a bleeding abrasion behind Barden's right ear and dislodge his glasses. Barden had "no idea" whether Craven had seen him at that point.

We view this evidence as sufficient to support Craven's conviction on count 2 of the amended information. A reasonable factfinder could conclude that Craven knew someone was trying to restrain his legs, and that he kicked with the intent to evade arrest and also touch or strike that person.

Judgment affirmed.

PEKELIS and KENNEDY, JJ., concur.

---

[5] No sufficiency challenge is made regarding Craven's assault of Officers Abraham and Gonzales.