IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30212-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACK MAURICE HEWSON, Jr., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Jack Maurice Hewson Jr. appeals his convictions for first degree

burglary and conspiracy to commit first degree robbery. He first contends the trial court

violated his confrontation right or abused its discretion when limiting his cross-

examination of a State witness in an attempt to show bias based on State leniency and

gang membership. Second, he contends the trial court erred in rejecting his Brady[1]-

based new trial motion. In his pro se statement of additional grounds for review (SAG),

Mr. Hewson raises concerns related to the State's precharging delay, the victim's

photomontage identification of him, the trial court's ER 609 rulings, and the prosecutor's

trial conduct. We reject Mr. Hewson's confrontation and Brady contentions. We find no

merit in Mr. Hewson's SAG concerns. Accordingly, we affirm.

---

[1] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

OVERVIEW

This case is about a first degree burglary and conspiracy to commit first degree robbery occurring at Jamie Robinson's Spokane house in 2007. Robert Delao, Andrew Oakes, and Joseph Hoofman (co-participants) admitted their crime participation. Although Mr. Delao and Mr. Oakes were federally prosecuted for unrelated or unspecified crimes, they apparently received State concessions not to prosecute for federal sentence benefits. Similarly, the State prosecuted Mr. Hoofman solely for driving while license suspended. The co-participants incriminated Mr. Hewson in court as the fourth crime participant. Ms. Robinson initially identified Mr. Hewson from a photomontage and later identified him in court. Mr. Hewson denied his participation, asserted an alibi, argued Ms. Robinson misidentified him, and raised a credibility-bias defense in an attempt to undermine his co-participants' incriminating testimony.

The trial court allowed extensive evidence of the co-participants' criminal backgrounds and the non-prosecution benefits the State offered them but limited evidence of particular sentencing consequences that might flow from Mr. Hewson's prosecution. The court allowed extensive evidence of the long, close friendship between Mr. Delao and Mr. Oakes and their business and personal animus towards Mr. Hewson, limiting solely evidence of their gang membership. The trial court allowed evidence showing Mr. Hewson's refusal to make bail for his long-time friend, Mr. Hoofman, which Mr. Hewson argued caused Mr. Hoofman's animus toward him. From the amply developed record, Mr. Hewson argued or received an adequate opportunity to argue his defense theories, including those the court partly limited. The jury rejected

2

his defenses and found Mr. Hewson guilty as charged of first degree burglary and conspiracy to commit first degree robbery, along with several firearm enhancements.

FACTS

On November 21, 2007, Mr. Delao and Mr. Oakes approached Ms. Robinson's house wearing masks and armed with guns, kicked open an exterior door and attempted to enter an interior kitchen door, but left when Ms. Robinson confronted them. Soon, an unmasked male, later identified as Mr. Hewson, appeared behind a window in the kitchen door and pointed a gun at Ms. Robinson just six inches away. Mr. Hewson left when he saw Ms. Robinson placing a telephone call. Mr. Hoofman related he drove a getaway car that Mr. Hewson provided him and that turned out to be owned by Denise LaCount. Ms. LaCount later became Mr. Hewson's alibi witness. Ms. LaCount testified Mr. Hoofman took her car without permission while Mr. Hewson stayed with her at the house. Mr. Delao, Mr. Oakes, and Mr. Hoofman each identified Mr. Hewson in court as the unmasked male who pointed the gun at Ms. Robinson.

Police showed Ms. Robinson three photomontages, on November 28, 2007, January 25, 2008, and February 12, 2008 respectively. She identified no perpetrators on the first two occasions. On the third occasion, she immediately began shaking and identified Mr. Hewson as a perpetrator with 90 to 97 percent certainty. Mr. Hewson did not object to this evidence. Ms. Robinson identified Mr. Hewson in court as the unmasked male who pointed the gun at her. Mr. Hewson attempted to show Ms. Robinson previously saw him when he visited her home to meet her house guest, James Crabtree, causing a misidentification; Mr. Crabtree contradicted this hypothesis.

3

On April 12, 2010, the State charged Mr. Hewson as a principal or accomplice to first degree burglary and conspiracy to commit first degree robbery. Mr. Delao cooperated with state authorities but Mr. Hewson did not. The State eventually alleged six firearm enhancements against Mr. Hewson. Apparently, Mr. Delao and Mr. Oakes were prosecuted federally but not in State court. We assume for discussion, without specific supporting evidence in our record that the State agreed not to prosecute them in exchange for their testimony against Mr. Hewson.[2] Similarly, we assume Mr. Hoofman, the getaway car driver, received a state benefit when the State prosecuted him solely for driving while license suspended.

Mr. Hewson unsuccessfully moved in limine to impeach Ms. Robinson with evidence she was convicted of two forgeries and a theft between 1994 and 1998, and of drug possession in 2008.[3] The State argued Ms. Robinson's prior forgery and theft convictions were stale because she had been released from confinement on them more than 10 years before testifying and her prior drug possession conviction was not probative of her truthfulness. The trial judge reasoned, "I am not satisfied . . . that this issue is more probative than unfairly prejudicial. It does have the aspect of inferring propensity. It doesn't necessarily go to credibility. There may be, however, some other bases to consider this . . . ." Report of Proceedings (RP) (May 9, 2011) at 17-18.

The State successfully moved in limine to exclude evidence of Mr. Delao's gang membership as either irrelevant or unfairly prejudicial. Mr. Hewson partly argued the

---

[2] Both parties confirmed this assumption at oral argument.

[3] Our record does not contain exact dates or other details regarding these prior convictions. We note it here for our ER 609 analysis.

4

gang evidence was relevant to show Mr. Delao's motive to falsely implicate him, suggesting Mr. Delao was protecting a fellow gang member. The court partly reasoned "just the fact of gang membership alone is not sufficient" to "provide the necessary probative value for veracity, reliability of testimony." RP (May 9, 2011) at 38. At trial, in the context of business animus, the court revisited the topic. Mr. Hewson wanted to show Mr. Delao's gang activities, especially drug money laundering, motivated him to fire Mr. Hewson from a business in which Mr. Delao, Mr. Oakes, and Mr. Hewson participated. Allowing the business animus evidence but excluding the underlying gang motivation evidence, the court explained: "It [g]rafts 403 protection against undue confusion or distraction by the jury, but it satisfies, again, to a certain extent a reasonable basis for the type of bias that the Defense is trying to move forward with so I would permit that." RP at 164. The court additionally allowed bias evidence based on Mr. Delao's and Mr. Oakes's attempt to get Mr. Hewson's probation revoked.

At the May 2011 trial, Mr. Delao testified for the State. On extensive cross-examination, Mr. Delao related his understanding of the State's concession not to prosecute and the federal concessions in his 70- to 87-month federal sentence. When Mr. Hewson began asking about disparities in Mr. Delao's sentence and what he might have received with state firearm enhancements, the trial court, sua sponte, called a sidebar and ordered defense counsel not to tie specific maximum sentence lengths to specific state charges or firearm enhancements while cross-examining Mr. Delao. The trial court expressed concern doing so would confuse issues by suggesting the specific maximum sentence lengths and enhancements that might apply to Mr. Hewson, and

5

thus undermine the jury instruction to ignore any punishment that may follow conviction.
Mr. Hewson objected to any limitation on his inquiry into the full extent of the State's
leniency toward Mr. Delao.

Mr. Oakes, who was then a federal inmate, testified for the State by deposition.
On extensive cross-examination, Mr. Oakes admitted he previously testified at Mr.
Delao's federal bail hearing regarding Mr. Delao's gang membership. The State did not
object. Later, in Mr. Hewson's closing argument to the jury, he argued without objection
Mr. Delao was his "good friend, old gang member, we go way back." RP at 484.[4] But
when Mr. Hewson continued referring to gang membership, the State objected. The
court ruled: "The issue is in front of the jury; however, if that was a product of error and
that fact should not have been provided, continued reference in the argument would be
improper. Certainly, . . . you have referenced that fact now before the jury in your
closing. I won't for the record strike that, but I am going to request you move forward
further." RP at 487.

As Mr. Hewson's alibi witness, Ms. LaCount related that on the night of the
burglary, she went to bed with Mr. Hewson around 10:00 p.m. and awoke around 1:00
a.m., noticing the television on in the living room. She said she did not check on Mr.
Hoofman, who had been sleeping on the couch, but by the next morning, he had left
with her car. The prosecutor then impeached Ms. LaCount with her pretrial interview
without objection from Mr. Hewson. In closing and rebuttal arguments, the prosecutor

---

[4] Unless otherwise noted, all citations to the Report of Proceedings are to the
transcript of the jury trial held between May 16 and 24, 2011.

told the jury the evidence showed Ms. LaCount changed her trial testimony, undermining Mr. Hewson's alibi defense strategy. Mr. Hewson did not object.

After the jury found Mr. Hewson guilty, Mr. Crabtree signed a statement saying, in his May 5, 2011 pretrial interview, he asked the prosecutor to "put in a good word for him" on his pending drug possession charge and the prosecutor "said he would." Clerk's Papers (CP) at 100, 102. Later, Mr. Crabtree filed an affidavit clarifying he sought the prosecutor's good word on his pending drug possession charge as "consideration for [his] help" in testifying against Mr. Hewson, and "was given the impression" the prosecutor agreed. CP at 101.

Mr. Hewson moved for a new trial. First, he argued the trial court impermissibly undercut his defense theory by precluding him from cross-examining Mr. Delao regarding his gang membership. Second, Mr. Hewson argued the State violated *Brady* by failing to disclose evidence of the alleged agreement between Mr. Crabtree and the prosecutor. The prosecutor and detective filed declarations contradicting Mr. Crabtree's assertions. The trial court denied the motion orally and in written findings and conclusions. First, the trial court partly reasoned evidence of Mr. Delao's gang membership was substantially more unfairly prejudicial than probative and was highly inflammatory and cumulative of other evidence, considering Mr. Hewson sought it solely to show Mr. Delao's business animus against him. Second, the court partly reasoned Mr. Crabtree's request for the prosecutor's good word on his pending drug possession charge was neither favorable to the defense nor material to guilt or punishment because Mr. Hewson failed to prove the prosecutor promised Mr. Crabtree a benefit in exchange

7

No. 30212-1-III
*State v. Hewson*

for his testimony. Mr. Hewson appealed.

## ANALYSIS

### A. Cross-Examination Limitations

The issue is whether the trial court violated Mr. Hewson's federal confrontation

right or abused its discretion in limiting cross-examination on, first, the full extent of

leniency the State provided Mr. Delao in exchange for his cooperation, and second, Mr.

Delao's gang membership. We review alleged confrontation clause violations de novo.

*State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). We review limitations on

cross-examination for abuse of discretion.[5] *State v. Fisher*, 165 Wn.2d 727, 752, 202

P.3d 937 (2009).

The federal confrontation clause provides a criminal defendant the right to

confront and cross-examine adverse witnesses. U.S. CONST. amend. VI; *Douglas v.*

*Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). This guarantees

an adequate opportunity for effective cross-examination, including impeachment with

minimally relevant[6] bias evidence.[7] *Davis v. Alaska*, 415 U.S. 308, 316-18, 94 S. Ct.

---

[5]  A trial court abuses its discretion if its decision is "manifestly unreasonable," based on "untenable grounds," or made for "untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) ("A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices." (citations omitted) (internal quotation marks omitted)).

[6]  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

8

1105, 39 L. Ed. 2d 347 (1974); *State v. Hudlow*, 99 Wn.2d 1, 15-16, 659 P.2d 514 (1983). Under the federal Confrontation Clause, a trial court "retain[s] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Thus, a trial court may exercise its sound discretion to preclude cross-examination that merely argues, speculates on, or vaguely suggests bias. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (citing *State v. Jones*, 67 Wn.2d 506, 512, 408 P.2d 247 (1965)).

First, Mr. Hewson contends the trial court erred by limiting cross-examination on the full extent of leniency the State provided Mr. Delao in exchange for his cooperation. Mr. Hewson argues he could have shown Mr. Delao escaped six state firearm enhancements, eliminating up to 24 years' confinement, not merely 5 years as he vaguely suggested to the jury. But the record shows the State did not charge Mr. Delao with any crime connected to these events. The jury clearly heard Mr. Delao received a safe harbor from all state prosecution, not just the sentence enhancements. Thus, any potential conviction or punishment was purely speculative, as was any bias arising from avoiding state firearm enhancements. *See Darden*, 145 Wn.2d at 621. A reasonable jury would not have received a "significantly different impression of [Mr. Delao's]

---

[7] "Bias is . . . the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984).

credibility" if the trial court had permitted Mr. Hewson's proposed cross-examination. *Davis*, 415 U.S. at 318. Additionally, the court expressed a reasonable concern that tying specific maximum sentence lengths to specific state charges or firearm enhancements while cross-examining Mr. Delao would confuse issues by suggesting they might apply to Mr. Hewson, and thus undermine the jury instruction to ignore any punishment that may follow conviction. Considering all, we conclude a tenable basis exists for the trial court's balanced ruling. *See Van Arsdall*, 475 U.S. at 679. Therefore, the court did not violate Mr. Hewson's federal confrontation right or abuse its discretion by limiting cross-examination on the full extent of leniency the State provided Mr. Delao in exchange for his cooperation.

Second, Mr. Hewson contends the trial court erred in limiting cross-examination on Mr. Delao's gang membership and denying a new trial on that basis. Mr. Hewson argues this curtailed his ability to show Mr. Delao's bias against him. During pretrial hearings, Mr. Hewson argued his proposed cross-examination would furnish a sufficient foundation for the jury to reasonably infer Mr. Delao's gang membership motivated him to falsely implicate Mr. Hewson and conceal the fourth burglary participant's true identity. Balancing the evidence's probative value against its potential for unfair prejudice, the trial court allowed the business animus motivation evidence while seeming to overlook or undervalue the gang membership motivation evidence.[8] Even

---

[8] We have reviewed Mr. Hewson's contention that this functions as a "finding" and lacks substantial evidence. *See State v. York*, 41 Wn. App. 538, 544, 704 P.2d 1252 (1985) (stating this court reviews challenged findings of fact entered upon a motion for a new trial to determine whether substantial evidence supports them); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994) (defining substantial evidence as "a

so, the evidence had low if any probative value because Mr. Hewson did not specify what testimony he could elicit to link Mr. Delao's gang membership with the existence of or motivation to protect an absent accomplice. Thus, any bias arising from gang membership was purely speculative. *See Darden*, 145 Wn.2d at 621. Again, a reasonable jury would not have received a "significantly different impression of [Mr. Delao's] credibility" if the trial court had permitted Mr. Hewson's proposed cross-examination. *Davis*, 415 U.S. at 318. Additionally, the court expressed reasonable concerns about injecting confusing, collateral gang membership issues into the trial. Again, we conclude a tenable basis exists for the trial court's balanced ruling. *See Van Arsdall*, 475 U.S. at 679.

Mr. Hewson relies on *United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) and *State v. Craven*, 67 Wn. App. 921, 841 P.2d 774 (1992) to urge a contrary conclusion. In *Abel*, the defendant, a defense witness, and a prosecution witness were each alleged members of the Aryan Brotherhood, "a secret prison sect sworn to perjury and self-protection." 469 U.S. at 54. The district court admitted the prosecution witness's testimony that the defendant and the defense witness were "members of a secret prison organization whose tenets required its members to deny its existence and 'lie, cheat, steal [and] kill' to protect each other." *Id.* (alteration in original). The United States Supreme Court affirmed, noting the jury could have

---

sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding"). While we agree with Mr. Hewson that the trial court seemed to misapprehend the purpose he intended for his proposed cross-examination, we note this makes no difference in our analysis because he nonetheless failed to specify what

reasonably inferred bias solely from evidence of common membership in a gang whose tenets mandated perjury and self-protection. *Id.* at 52-54, 55.

In *Craven*, the defendant and several defense witnesses were alleged members of the Black Gang Disciples, a gang that wore black clothing. 67 Wn. App. at 924-25. The trial court permitted the prosecution to cross-examine them "regarding their clothing and possible gang membership." *Id.* at 928. We held the trial court did not abuse its discretion because the cross-examination was relevant to show the defense witnesses held bias toward the defendant. *Id.*

Our case is unlike *Abel* and *Craven*. Those cases involved a witness's possible bias toward the defendant stemming from their common gang membership, but this case involves Mr. Delao's possible bias against Mr. Hewson stemming from Mr. Delao's individual gang membership. Common gang membership itself might motivate a witness to slant testimony in favor of a party. Thus, a jury might reasonably infer bias from common gang membership alone. By contrast, nothing inherent in individual gang membership itself motivates a witness to slant testimony against a party. More evidence, such as indicators of a rivalry, is required for a jury to reasonably infer bias from individual gang membership. And, as noted, Mr. Hewson did not specify to the trial court what testimony he could elicit to link the mere fact of Mr. Delao's gang membership with the existence of an absent accomplice, let alone provide a coherent motivation to falsely implicate Mr. Hewson. Considering all, we conclude the trial court did not violate Mr. Hewson's federal confrontation right or abuse its discretion by limiting

testimony he could elicit to link Mr. Delao's gang membership with the existence of or

12

cross-examination on Mr. Delao's gang membership.

In sum, the trial court allowed Mr. Hewson extensive cross-examination consistent with confrontation principles, enabling him to develop the necessary facts to argue his defense theories. Mr. Hewson was able to, and did, argue his co-participants' bias against him. The court's cross-examination limitations are supported by tenable grounds. Thus, we conclude the court did not reversibly err in its rulings or violate confrontation principles. Although Mr. Hewson essentially argues he should have received unfettered cross-examination, we are confident he received a fair, albeit imperfect trial. *See State v. Ingle*, 64 Wn.2d 491, 499, 392 P.2d 442 (1964). Because we conclude the court committed no error, we do not discuss any prejudice connected with its limitations on cross-examination.

### B. *Brady* Violation

The issue is whether the trial court erred in its new trial motion ruling by, first, finding the prosecutor never made the alleged promise to Mr. Crabtree, and second, concluding the State did not violate *Brady* by withholding impeachment evidence regarding the alleged agreement.

We review challenged findings of fact entered upon a motion for a new trial to determine whether substantial evidence supports them. *State v. York*, 41 Wn. App. 538, 544, 704 P.2d 1252 (1985). Substantial evidence is "a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). A finding of fact is

---

motivation to protect an absent accomplice.

13

binding on appeal if supported by substantial evidence. *Id.*

The trial court found while "[Mr.] Crabtree believed that the prosecutor was going to 'put in a good word for him'" on his pending drug possession charge, "the State proffered that no such promise was made." CP at 127. Mr. Hewson contends the latter finding lacks substantial evidence. His contention is untenable because it debases the prosecutor's and detective's declarations to the contrary, and discounts the trial court's credibility determinations. Though neither declaration expressly denied Mr. Crabtree's claims, they nonetheless presented a sufficient quantity of evidence to persuade a fair-minded, rational person that the prosecutor never promised Mr. Crabtree a benefit in exchange for his testimony. Therefore, substantial evidence supports the challenged finding and it is binding on appeal.

We review alleged *Brady* violations de novo. *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011). Under *Brady*, the State violates a criminal defendant's due process right if (1) it suppresses evidence that is (2) favorable to the defense and (3) material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *see Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

The State suppresses evidence by failing to disclose it, regardless of whether the defense requests it. *Kyles v. Whitley*, 514 U.S. 419, 437-38, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); *United States v. Agurs*, 427 U.S. 97, 107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). But if the defense reasonably could have discovered the evidence through due diligence, the State's failure to disclose it does not constitute suppression.

14

*Mullen*, 171 Wn.2d at 896 (citing *State v. Lord*, 161 Wn.2d 276, 293, 165 P.3d 1251 (2007)). Evidence is favorable to the defense if it is exculpatory or impeaching. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). Evidence is material to guilt or punishment "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles*, 514 U.S. at 433-34 (quoting *Bagley*, 473 U.S. at 682). A reasonable probability of a different result exists where the State's nondisclosure "'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678). Materiality requires evaluating the State's nondisclosure "in the context of the entire record." *Agurs*, 427 U.S. at 112. Thus, impeachment evidence "may not be material if the . . . other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, ___ U.S. ___, 132 S. Ct. 627, 630, 181 L. Ed. 2d 571 (2012).

Here, the State failed to disclose evidence that Mr. Crabtree requested the prosecutor's good word on his pending drug charge. Further, while it is arguable that Mr. Hewson could have reasonably discovered this evidence through due diligence, we proceed for discussion as if he could not. Though the prosecutor never promised him a benefit in exchange for his testimony, Mr. Crabtree nonetheless expected to receive "consideration for [his] help." CP at 101. While Mr. Crabtree's expectation was unfounded, Mr. Hewson still could have exploited it on cross-examination had the State disclosed evidence that Mr. Crabtree requested the prosecutor's good word on his pending drug charge. *See Giglio v. United States*, 405 U.S. 150, 155, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) ("[E]vidence of any understanding or agreement [between the

15

government and a prosecution witness] as to a future prosecution would be relevant to [the witness's] credibility and the jury [i]s entitled to know of it."). Even so, other trial evidence was strong enough to sustain our confidence in the verdict had the jury discredited Mr. Crabtree.

Mr. Crabtree related Mr. Hewson contacted him five to seven times when he lived at Ms. Robinson's house. Each time, Mr. Hewson appeared outside the house and Mr. Crabtree left with him to acquire or consume cocaine. Ms. Robinson ordered Mr. Crabtree to never bring former prison inmates or drug users home, but Mr. Hewson was both. Mr. Crabtree claimed he never allowed Mr. Hewson to visit inside the house, though Mr. Hewson once stepped about a foot inside the door and once followed Mr. Crabtree to another door. Mr. Crabtree recalled Ms. Robinson was present inside the house some of the times Mr. Hewson visited, but he could not say whether Ms. Robinson saw Mr. Hewson on any of those occasions. Mr. Crabtree maintained he never introduced Mr. Hewson to Ms. Robinson.

Independent evidence would have proven these facts even if the jury had discredited Mr. Crabtree. For example, Mr. Hewson adopted Mr. Crabtree's testimony regarding their drug transactions outside Ms. Robinson's house, stating, "I am not going to deny anything that Jim Crabtree testified to because it is true. Yes, I did have some issues so, yes, that is true." RP at 414. Additionally, Mr. Hewson's former community corrections officer testified he learned Mr. Hewson was using drugs seven months before the burglary. While Mr. Hewson claimed Ms. Robinson saw him twice and knew who he was, Ms. Robinson's testimony contradicted this.

Considering all, the State's nondisclosure does not undermine our confidence in the verdict, and Mr. Hewson has not raised a reasonable probability that, had the State disclosed the impeachment evidence, his trial would have produced a different result. Therefore, we conclude the impeachment evidence was not material to guilt or punishment. It follows that the State did not violate *Brady* and the trial court ruled properly upon Mr. Hewson's new trial motion.

### C. Pro Se Statement of Additional Grounds

First, Mr. Hewson contends the State's 29-month charging delay was part of a deliberate strategy to pressure him and his co-participants into cooperating with investigators, violating due process.

We review precharging delay claims de novo. *State v. Oppelt*, 172 Wn.2d 285, 290, 257 P.3d 653 (2011). The State violates a criminal defendant's due process right if (1) it delays in filing charges; (2) the defendant shows the delay caused him or her actual prejudice; and (3) balancing the degree of prejudice against the State's reasons for the delay, the court concludes permitting prosecution would offend "those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977) (citations and internal quotation marks omitted); *see Oppelt*, 172 Wn.2d at 295 & n.8 (clarifying the three-part test for precharging delay claims applied here). While statutes of limitations "provide 'the primary guarantee, against bringing overly stale criminal charges,'" they are not definitive for due process purposes. *Lovasco*, 431 U.S. at 789

17

(quoting *United States v. Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468

(1971)). Actual prejudice occurs if "'the asserted error had practical and identifiable

consequences in the trial.'" *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)

(quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). Generally, the

State need not file charges as soon as it has probable cause to prosecute but may

continue investigating until it is satisfied it can prove guilt beyond a reasonable doubt.

*Lovasco*, 431 U.S. at 790-91.

Here, the alleged crimes occurred on November 21, 2007, the State apparently

completed its investigative report five months later on April 9, 2008, and the State

charged Mr. Hewson after a further 24-month delay on April 12, 2010. He seems to

complain solely that the State's continued investigation yielded too much incriminating

evidence. Nothing suggests the State delayed as part of a deliberate strategy to

pressure him and his co-participants into cooperating with investigators. Because he

identifies no practical and identifiable consequences in the trial, he fails to show the

delay caused him actual prejudice. Therefore, the delay did not violate due process.

Second, Mr. Hewson contends the trial court erred in admitting Ms. Robinson's

photomontage identification because the procedure was unfair to him and caused her to

misidentify him. Though he did not object to this evidence at trial, we assume, without

deciding, he may raise this alleged due process violation for the first time on appeal.

*See* RAP 2.5(a)(3); *State v. Collins*, 152 Wn. App. 429, 434, 216 P.3d 463 (2009).

We review alleged constitutional violations de novo. *State v. Siers*, 174 Wn.2d

269, 273-74, 274 P.3d 358 (2012). Admitting a witness's out-of-court identification

violates a criminal defendant's due process right if the State procured it by arranging circumstances that (1) were "impermissibly suggestive" and (2) created "a substantial likelihood of irreparable misidentification." *State v. Vickers*, 148 Wn.2d 91, 118, 59 P.3d 58 (2002); *see Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). A photomontage is impermissibly suggestive if it "directs undue attention to a particular photo." *State v. Eacret*, 94 Wn. App. 282, 283, 971 P.2d 109 (1999). Because "reliability is the linchpin" of the analysis, a substantial likelihood of irreparable misidentification exists solely where, under the totality of circumstances, "the corrupting effect of the suggestive identification" outweighs "indicators of [the witness's] ability to make an accurate identification." *Manson v. Brathwaite*, 432 U.S. 98, 110, 113-14, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). Such indicators include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

Here, police showed Ms. Robinson three photomontages, on November 28, 2007, January 25, 2008, and February 12, 2008 respectively. At the first and second photomontages, Ms. Robinson had no physical reaction and identified no perpetrators but, at the third photomontage, she immediately began shaking and identified Mr. Hewson as a perpetrator with 90 to 97 percent certainty. Because he does not identify how these circumstances directed undue attention to his photograph, he fails to show the photomontage identification was impermissibly suggestive. Moreover, Mr. Hewson

19

does not contest Ms. Robinson's in court identification of him. Therefore, the trial court did not violate due process by admitting the photomontage identification.

Third, Mr. Hewson contends the trial court erred in precluding him from impeaching Ms. Robinson with evidence of her prior forgery, theft, and drug possession convictions without making "specific findings on record as to the particular facts and circumstances it considered." SAG at 19.

Where, as here, the trial court interpreted the evidentiary rule correctly, we review a decision to admit or exclude evidence under it for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *see also State v. Rivers*, 129 Wn.2d 697, 704-05, 921 P.2d 495 (1996). A trial court abuses its discretion if it fails to comply with an evidentiary rule's requirements. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

If a witness was previously convicted of a crime "involv[ing] dishonesty or false statement," the prior conviction is automatically admissible to impeach the witness's credibility. ER 609(a)(2). If a witness was previously convicted of some other crime, punishable by more than one year's imprisonment, the prior conviction is admissible to impeach the witness's credibility solely if "the court determines that the probative value of admitting this evidence outweighs the prejudice to the party against whom the evidence is offered." ER 609(a)(1). But in either case, if the witness was released from confinement on the conviction more than 10 years before testifying, the conviction is inadmissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially

20

outweighs its prejudicial effect." ER 609(b).

Mr. Hewson sought to impeach Ms. Robinson with evidence she was convicted of two forgeries and a theft between 1994 and 1998, and a drug possession in 2008. The trial judge refused each attempt simultaneously, stating, "I am not satisfied . . . that this issue is more probative than unfairly prejudicial. It does have the aspect of inferring propensity. It doesn't necessarily go to credibility. There may be, however, some other bases to consider this . . . ." RP (May 9, 2011) at 17-18.

Ms. Robinson's prior forgery and theft convictions involved dishonesty within the meaning of ER 609(a)(2). *See State v. Ray*, 116 Wn.2d 531, 545-46, 806 P.2d 1220 (1991); *State v. Jones*, 101 Wn.2d 113, 123, 677 P.2d 131 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988), *adhered to on recon.*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906 (1989). Nonetheless, their admissibility was governed by ER 609(b) because Ms. Robinson was released from confinement on them more than 10 years before testifying.

Under ER 609(b), Ms. Robinson's stale forgery and theft convictions were presumed inadmissible unless the trial court determined, in the interests of justice, their probative value supported by specific facts and circumstances substantially outweighed their prejudicial effect. A trial court must articulate its ER 609(b) balancing analysis on the record. *State v. Russell*, 104 Wn. App. 422, 433, 16 P.3d 664 (2001). This requires the trial court to "'make specific findings on the record as to the particular facts and circumstances it has considered.'" *Id.* at 436-37 (emphasis omitted) (quoting S. REP. No. 93-1277, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7061-62) (construing

21

ER 609(b) the same as Fed. R. Evid. 609(b)).

Ms. Robinson's prior drug possession conviction did not involve dishonesty within the meaning of ER 609(a)(2). *See State v. Hardy*, 133 Wn.2d 701, 707, 946 P.2d 1175 (1997). Further, it was punishable by more than one year's imprisonment. *See* RCW 69.50.4013(2); RCW 9A.20.021(1)(c). Thus, its admissibility was governed by ER 609(a)(1).

Under ER 609(a)(1), Ms. Robinson's prior drug possession conviction was admissible solely if the trial court determined its probative value outweighed its prejudicial effect. A witness's prior conviction is probative, under ER 609(a)(1), if it is relevant to the witness's truthfulness. *Hardy*, 133 Wn.2d at 707-08. Whether a prior conviction is probative of truthfulness depends on factors including "(1) the length of the [witness's] criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the [witness]; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime."[9] *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980); *see also Jones*, 101 Wn.2d at 121-22. A trial court must articulate its ER 609(a)(1) balancing analysis on the record. *Jones*, 101 Wn.2d at 122. This requires the trial court to "state, for the record, the factors which favor admission or exclusion." *Id.*

---

[9] We have altered these factors to apply to Ms. Robinson because, while they were originally designed to apply solely when the witness was a criminal defendant, an amendment extended ER 609(a)(1)'s balancing analysis to all witnesses in all matters. ER 609(a)(1), 110 Wn.2d 1128 (1988); ER 609(a)(1) cmt., 119 Wn.2d 1205 (1992); ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON § 609.04[3][b], at 609-15 to -16 (4th ed. 2011); 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 609.7, at 490 (5th ed. 2007).

Assuming the trial court was, as Mr. Hewson suggests, insufficiently specific regarding its evidentiary ruling, any error is harmless. The court's failure to fully articulate its ER 609 balancing analysis on the record is harmless if, "from the record as a whole," this court can determine the ER 609 ruling was correct. *State v. Bond*, 52 Wn. App. 326, 333, 759 P.2d 1220 (1988). But even an erroneous ER 609 ruling is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Ray*, 116 Wn.2d at 546 (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

At the pretrial motion in limine hearing, Mr. Hewson argued Ms. Robinson's stale forgery and theft convictions "are relevant because they do show that the witness at that time . . . had apparently no difficulties in making these types of false statements." RP (May 9, 2011) at 14-15. But he presented no particular facts or circumstances showing why these stale convictions remained probative of Ms. Robinson's truthfulness at trial, let alone how such probative value substantially outweighed the prejudicial effect. Thus, he could not overcome ER 609(b)'s presumption of inadmissibility. *See State v. Jones*, 117 Wn. App. 221, 233, 70 P.3d 171 (2003). Further, Mr. Hewson argued Ms. Robinson's prior drug possession conviction "goes to her credibility insofar as she is someone who is impaired by drugs." RP (May 9, 2011) at 16. But he reviewed no factors showing why the conviction was probative of Ms. Robinson's truthfulness, let alone how such probative value outweighed the prejudicial effect. Thus, he could not overcome ER 609(a)(1)'s presumption of inadmissibility. *See State v. Calegar*, 133 Wn.2d 718, 722, 727, 947 P.2d 235 (1997). Considering all, the trial court's ER 609

23

ruling was correct. Any error was harmless.

Finally, Mr. Hewson contends the prosecutor committed misconduct denying him a fair trial by asking his alibi witness false or misleading questions on cross-examination and referring to matters outside the record in final arguments.

Proving prosecutorial misconduct requires the defendant to establish "the prosecutor's conduct was both improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Conduct referencing matters outside the record is improper. *State v. Davis*, 175 Wn.2d 287, 330, 290 P.3d 43 (2012). Conduct is prejudicial if it has a substantial likelihood of affecting the jury's verdict. *Id.* However, if the defendant does not object to the prosecutor's conduct at trial, the defendant waives any error claim arising from it, unless it was "so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

The prosecutor was entitled to ask Ms. LaCount about her alleged pretrial interview statements on cross-examination because they qualified as prior inconsistent statements. *See* ER 613(a); *State v. Newbern*, 95 Wn. App. 277, 292, 975 P.2d 1041 (1999) (stating that, under ER 613(a), "a witness's prior statement is admissible for impeachment purposes if it is inconsistent with the witness's trial testimony"). And, the prosecutor laid a proper foundation for introducing extrinsic evidence of the statements because he gave Ms. LaCount an opportunity to explain or deny them on cross-examination. *See* ER 613(b); *State v. Johnson*, 90 Wn. App. 54, 70, 950 P.2d 981 (1998) (stating that, to lay a proper foundation under ER 613(b), "it is sufficient for the

examiner to give the declarant an opportunity to explain or deny the statement, either on cross-examination or after the introduction of extrinsic evidence").

Additionally, the prosecutor's remarks in closing and rebuttal arguments were proper because they were within the wide latitude of reasonable inferences he was entitled to draw from the evidence. *See State v. Gentry*, 125 Wn.2d 570, 641, 888 P.2d 1105 (1995) (stating a prosecutor possesses wide latitude in drawing reasonable inferences from the evidence during closing and rebuttal arguments). Even so, Mr. Hewson's failure to object to the prosecutor's conduct at trial waived any error claim arising from it because Mr. Hewson has not shown it was so flagrant and ill intentioned that its resulting prejudice could not be cured by a proper jury instruction.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, A.C.J.

25