# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                                    Respondent,<br><br>        v.<br><br>TYLER JUSTIN MCVEY,<br><br>                                    Appellant. | No.  53345-6-II<br>(Consolidated) |
| In the Matter of the Personal Restraint<br>Petition of<br><br>TYLER JUSTIN MCVEY,<br><br>                                    Petitioner. | No.  53631-5-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Tyler McVey was convicted of first degree child rape and first degree child molestation.  In this consolidated case, we consider McVey's direct appeal and personal restraint petition (PRP), both raising ineffective assistance of counsel arguments.  In his direct appeal, McVey contends that the trial court erred by denying his CrR 7.8 motion for relief from judgment because he received ineffective assistance of counsel when his trial counsel failed to interview a potential eyewitness and failed to call that witness to testify at trial.  In his PRP, McVey contends that he received ineffective assistance of counsel because his trial counsel failed to share discovery with McVey and did not call McVey to testify at trial.  We disagree with all of McVey's contentions, affirm the trial court's denial of his motion for relief from judgment, and deny his PRP.

FACTS

I. BACKGROUND FACTS

When ES was four years old her father, Jason Seevers, had full custody of her, but she frequently visited her mother, Kecia Johnson, at Johnson's home. At the time, Johnson's boyfriend, McVey, and her stepfather, Mark Schmidt, often stayed at her home. During ES's visits, when Johnson left for work, McVey would watch ES. Schmidt was incapable of watching ES due to a previous stroke. After one visit to Johnson's house, ES told Seevers that McVey touched her and she did not like it. When Seevers's wife handed ES a doll and asked ES where McVey had touched her, ES pointed at the middle of the doll's groin. ES later told a forensic interviewer that McVey had put his hand inside her body.

The State charged McVey with one count of first degree rape of a child and one count of first degree child molestation. At trial, McVey chose not to testify. McVey's trial counsel did not call any defense witnesses and, during his closing argument, argued primarily that ES fabricated the allegations against McVey at the encouragement of her father as part of an ongoing child custody battle with Johnson. The jury returned guilty verdicts on both counts.

II. CrR 7.8 MOTION

After our court affirmed McVey's convictions following his first appeal, McVey filed a CrR 7.8 motion for relief from judgment. In his motion, McVey argued that he received ineffective assistance of counsel during his trial. The trial court ordered an evidentiary hearing on McVey's motion.

David Haller testified at the CrR 7.8 hearing. He explained that McVey's trial counsel, Robert Brungardt, had hired him as a private investigator and asked him to attempt to make contact with Schmidt. Although Haller did not make contact with Schmidt in person, he did

2

exchange text messages with someone who said he was Schmidt. Haller asked Schmidt if he could see ES and McVey while waiting for ES's father to pick her up on the day in question, and Schmidt replied, "[N]o." 1 Report of Proceedings (RP) at 101. Haller also contacted Johnson and asked if she had discussed the events with Schmidt. Johnson told Haller that Schmidt told her he had not seen anything unusual that day but he did not have ES and McVey in his sight for the entire time. Haller testified that in the course of his investigation, he learned that Schmidt had moved to Florida, but he was unable to obtain an address for him.

Brungardt also testified at the hearing. Brungardt testified that McVey had told him Schmidt could be an alibi witness, which is why Brungardt directed Haller to attempt to locate Schmidt. Brungardt recalled that ES had stated that Schmidt had been in his room at the time of the rape. Brungardt explained that he did not believe Schmidt would be a helpful witness based on Schmidt's statement that he did not have direct sight of McVey and ES during the relevant time period. Brungardt was also aware that Schmidt had health issues from a previous stroke that limited his ability to communicate, which factored into his decision not to pursue him further as a witness. Instead, Brungardt chose to pursue an alternative defense theory focusing on child custody issues.

Brungardt testified about his pretrial conversations with McVey. Brungardt recalled discussing the report of ES's forensic interview with McVey and explaining to McVey that Brungardt had listened to the audio of the interview. Brungardt also testified that he had multiple conversations with McVey about McVey's right to testify during trial. At the time of their conversations, Brungardt made McVey aware of his investigation into the case including listening to the forensic interview. Brungardt testified, "I never and have never told a client that he or she should not testify." 1 RP at 150.

3

Schmidt also testified at the CrR 7.8 hearing. Schmidt had significant difficulty testifying audibly and answered each question by nodding "yes" or "no." Schmidt acknowledged that he had lived at Johnson's home with ES, but shook his head "no" when asked if he lived there when ES said McVey touched her inappropriately. Schmidt shook his head "no" when asked if he ever saw McVey touch ES inappropriately. 2 RP at 172. Schmidt shook his head "no" when asked if ES ever told him that McVey touched her inappropriately. 2 RP at 178. Schmidt shook his head "no" when asked if he remembered the day of the incident between ES and McVey. 2 RP at 184. Schmidt did not remember if he was at Johnson's house on the day of the incident and did not have any direct knowledge of whether the allegations did or did not occur.

Schmidt did not recall whether he exchanged text messages with Haller. Schmidt acknowledged that the phone number Haller messaged belonged to him. Schmidt could not recall whether he had ever talked to a lawyer other than McVey's counsel for the CrR 7.8 hearing or if he ever spoke to law enforcement regarding the incident with ES.

Following the CrR 7.8 hearing, the trial court entered written findings of fact and conclusions of law. The court found the State's witnesses credible. The trial court also found that Schmidt's previous stroke adversely affected his cognitive function, ability to communicate, and his memory. The trial court found that Schmidt had difficulty answering yes or no questions appropriately, struggled to answer simple questions, and expressed a lack of comprehension. Due to contradictions in Schmidt's testimony and his lack of comprehension, the trial court found that Schmidt's testimony was unbelievable and that, had he been called to testify at trial, a jury would have given his testimony no weight, such that there was no reasonable probability that testimony from Schmidt would have affected the outcome of trial. Based on these findings,

4

the trial court concluded that McVey could not show that he was prejudiced by Brungardt's decision not to further investigate Schmidt or call Schmidt as a witness at trial, and the trial court denied McVey's motion for relief from judgment.

McVey appeals the trial court's denial of his motion for relief from judgment.

ANALYSIS

I. LEGAL PRINCIPLES

We review a superior court's denial of a CrR 7.8 motion for relief from judgment for abuse of discretion. *State v. Robinson*, 193 Wn. App. 215, 217, 374 P.3d 175 (2016). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds, or when no reasonable judge would have reached the same decision. *Robinson*, 193 Wn. App. at 217-18; State *v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review the findings of fact on a CrR 7.8 motion for substantial evidence. *State v. Ieng*, 87 Wn. App. 873, 877, 942 P.2d 1091 (1997). Substantial evidence is a sufficient quantity of evidence to persuade a rational, fair-minded person that a finding is true. *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). We defer to the trier of fact on credibility issues. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Unchallenged findings of fact are verities on appeal. *State v. Stewart*, 12 Wn. App. 2d 236, 240, 457 P.3d 1213 (2020).

Under CrR 7.8(b)(5), a court may grant relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment." Ineffective assistance of counsel can provide the basis for vacating a judgment under CrR 7.8(b)(5). *See State v. Martinez*, 161 Wn. App. 436, 441, 253 P.3d 445 (2011).

"We review ineffective assistance of counsel claims de novo." *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Ineffective assistance of counsel is a two-prong inquiry. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient, and the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is no ineffective assistance when counsel's complained of actions are trial tactics or go to the theory of the case. *Grier*, 171 Wn.2d at 33. There is a strong presumption that defense counsel's conduct was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336.

To be effective, trial counsel must investigate the case. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). Counsel's duty includes making reasonable investigations, or making a reasonable decision that renders particular investigations unnecessary. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 355, 325 P.3d 142 (2014). This duty to investigate includes interviewing witnesses. *Jones*, 183 Wn.2d at 339. The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics, but this presumption may be overcome by showing that the witness was not presented because counsel failed to conduct appropriate investigations. *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987).

II. CrR 7.8 MOTION

McVey argues that the trial court abused its discretion by denying his motion for relief

from judgment because he received ineffective assistance from his trial counsel when counsel

failed to adequately investigate Schmidt and failed to call him to testify at trial. We disagree.

McVey contends that his trial counsel failed to adequately investigate Schmidt, but the

record does not support his contention. Rather, the record reflects that trial counsel conducted a

reasonable investigation into Schmidt upon learning he may be a potential alibi witness. Based

on counsel's investigator's communications with Schmidt, Schmidt's health challenges,

statements by ES in her forensic interview, and Johnson's recollection of conversations with

Schmidt, trial counsel made the tactical decision not to further pursue him as a witness.

Brungardt testified that he made the strategic decision to present a different defense theory at

trial—that the rape accusations were fabricated as part of an ongoing child custody battle. Given

this testimony, McVey cannot show that trial counsel's decision not to pursue Schmidt further or

call him as a witness at trial was anything other than a legitimate trial tactic. Legitimate trial

tactics do not constitute deficient performance. *McFarland*, 127 Wn.2d at 336.

The trial court did not enter findings or conclusions regarding whether trial counsel

rendered deficient performance, ending its inquiry after concluding that McVey could not satisfy

the prejudice prong of the *Strickland*[1] test. But we may affirm on any grounds supported by the

record, and Brungardt's decision not to pursue Schmidt as a witness was clear trial strategy.

---

[1] *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984).

*State v. Streepy*, 199 Wn. App. 487, 500, 400 P.3d 339 (2017). Accordingly, we affirm the trial

court's denial of McVey's CrR 7.8 motion.[2]

## II. PERSONAL RESTRAINT PETITION

In his PRP, McVey contends that he received ineffective assistance of trial counsel

because his counsel failed to review all discovery with McVey and did not call McVey to testify

at trial.[3] We disagree.

A petitioner may request relief through a PRP when he is under unlawful restraint. RAP

16.4(a)-(c). One way to prove unlawful restraint is for a personal restraint petitioner to show a

constitutional error that results in actual and substantial prejudice. *In re Pers. Restraint of*

*Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). If such a petitioner makes a successful

ineffective assistance of counsel claim, he has necessarily met his burden to show actual and

---

[2] In a Statement of Additional Grounds for Review, McVey points out that Schmidt was capable of driving himself to-and-from the casino, arguing it evidences Schmidt's competence and undermines the trial court's finding that a jury would have found Schmidt's testimony unbelievable. But substantial evidence supports the trial court's finding. Schmidt struggled to answer questions at the hearing and had limited recall of the relevant time period. McVey does not assign error to the trial court's findings that Schmidt had difficulty answering yes or no questions appropriately, had difficulty answering simple questions, and demonstrated a lack of comprehension. These findings are now verities on appeal. *Stewart*, 12 Wn. App. 2d at 240. That Schmidt occasionally drove himself to the casino does not overcome the substantial evidence supporting the trial court's findings.

[3] In his petition, McVey occasionally references trial counsel's alleged failure to cross-examine ES as a basis for his ineffective assistance of counsel claim, but the substance of his argument does not mention cross-examination and focuses entirely on counsel's review of discovery and McVey's decision not to testify. "'[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012) (quoting *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (internal quotations omitted)). Accordingly, we do not consider McVey's assertion that trial counsel failed to adequately cross examine ES.

substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

McVey states that he was not aware of ES's forensic interview and that had trial counsel reviewed it with him and called Schmidt as a witness at trial, McVey would have testified at trial. But the record does not support McVey's contention.[4] Brungardt testified that he listened to the audio of ES's forensic interview and discussed the contents of it with McVey. Brungardt also testified that he explained to McVey that he was unable to locate Schmidt.

Brungardt also recalled having multiple conversations with McVey about McVey's right to testify during trial. Brungardt testified, "I never and have never told a client that he or she should not testify." 2 RP at 150. At trial, the court took a brief recess for trial counsel and McVey to discuss whether McVey wanted to testify. Following the recess, trial counsel informed the court that McVey chose not to testify. The trial court confirmed with McVey that that was his choice and that he did not need any more time to make that decision.

The record does not support McVey's contentions in his PRP. Instead, the record shows that trial counsel appropriately reviewed discovery and discussed the case with McVey before and during trial, and that McVey made an informed decision not to testify. Because McVey's arguments are based on incorrect facts, he fails to show that his trial counsel rendered deficient performance such that McVey received ineffective assistance of counsel.

---

[4] McVey made this identical argument in his CrR 7.8 motion, but conceded the issue at the hearing after evidence was presented that did not support his claim.

We affirm the trial court's denial of McVey's CrR 7.8 motion for relief from judgment and deny McVey's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

_____
Melnick, J.

_____
Cruser, J.