**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 82306-0-I |
| v. | UNPUBLISHED OPINION |
| ZION TYRONE GRAE-EL, | |
| Appellant. | |

DWYER, J. — Zion Grae-El and his spouse were jointly charged with assaults involving three of their children. Grae-El decided to plead guilty to reduced charges after he learned that his spouse wished to accept the State's plea offer to her, which was contingent on both defendants accepting their respective offers. Approximately a year after Grae-El pleaded guilty, was sentenced to credit for time served, and was released from custody, he filed a CrR 7.8 motion seeking to vacate the judgment, and alleging ineffective assistance of counsel. The trial court denied the motion after an evidentiary hearing. Because Grae-El fails to demonstrate that his counsel's representation was deficient or that he would have insisted on proceeding to trial but for the conduct of his counsel, we affirm.

I

In 2018, Zion Grae-El was living in Seattle with his spouse, Caprice Strange, and five children. Two of the children, E.A.D. and E.M.D., are Grae-El's children from a prior relationship, and another two, A.S. and A.G., are Strange's children from a previous relationship. The youngest child, Z.G., is the couple's child in common. The family came to the attention of law enforcement and Child Protective Services (CPS) in November 2018 after a school employee noticed that one of the children had facial injuries and reported suspected abuse.[1]

Medical professionals at Seattle Children's Hospital examined the children, who ranged in age from two to nine years old, and determined that all five had markings or injuries that were "consistent with abuse." The children's injuries were photographed in conjunction with the examinations. To medical staff and in later interviews, the children described "doing positions" and "whoopings" received at the hands of Grae-El and Strange.[2] They reported being hurt by their parents if they failed to hold a position for the allotted amount of time.[3] They described physical discipline involving the use of belts, spoons, and spatulas. The children recounted specific incidents, including occasions when Grae-El punched A.S. and gave him a black eye, when E.A.D. was hit on the head with a belt, and when Grae-El "slammed" E.M.D. to the ground and caused him to black out.

---

[1] The underlying facts are largely derived from the redacted certification of probable cause that Grae-El agreed the trial court could consider for purposes of his plea and sentencing.

[2] Grae-El later testified that the positions included leg raises, wall sits, and planks.

[3] According to Grae-El, the children were generally required to hold positions for a total of six minutes.

All of the children were removed from the home and Grae-El's biological children, E.A.D. and E.M.D., were sent to Minnesota to live with their mother. In Minnesota, E.A.D. reported that Grae-El had sexually assaulted her. The State arranged for separate forensic interviews of the four oldest children.

The State charged Grae-El with rape of a child in the first degree (of E.A.D.) and assault of a child in the third degree (of A.S.), alleging that both crimes involved domestic violence. The same information charged Strange with assault of a child in the third degree (of E.A.D.).[4] While the criminal case progressed, a simultaneous dependency action involving the children was underway. Attorney Jesse Dubow represented Grae-El in the criminal matter.

Through counsel, Grae-El moved to sever the rape charge. The trial court granted the motion. In so ruling, the court maintained the defendants' joint trial on the assault charges. Prior to trial, the State indicated its intent to assert additional assault charges.

On September 4, 2019, after a week-long trial on the severed rape charge, a jury acquitted Grae-El. Within a day of the verdict, the court began to hear pretrial motions for the assault case and the State moved to amend the information. The amended information added three additional counts of assault of a child in the second degree: one count charged Grae-El with assaulting E.M.D. and two counts charged Grae-El and Strange jointly with assaulting A.S. and E.M.D. See RCW 9A.36.130. The State alleged that all counts involved

---

[4] The original information incorrectly identified the alleged victim as to this count and was later corrected.

3

domestic violence. Both defendants entered pleas of not guilty and asserted defenses of general denial and the statutory defense of reasonable and moderate discipline. See RCW 9A.16.100[5] ("[P]hysical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child."). The statutory reasonable discipline defense was based on Grae-El's testimony in the rape trial. He described using "escalating [ ] discipline tactics" for the children involving warnings, "deprivation," and "isolation," followed by "either positions or whoopin[gs]." Grae-El testified that "whoopings" involved either "whacks" across the hands with a spoon or plastic spatula, or over-the-knee "spankings" with a belt.

In the midst of jury selection, the State made plea offers to both Grae-El and Strange. Each offer was contingent on both defendants accepting their respective offers and pleading guilty. As to Grae-El, who was in custody pending trial, the offer allowed him to plead guilty to reduced charges: one felony, assault

---

[5] RCW 9A.16.100 provides, in its entirety:

It is the policy of this state to protect children from assault and abuse and to encourage parents, teachers, and their authorized agents to use methods of correction and restraint of children that are not dangerous to the children. However, the *physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child*. Any use of force on a child by any other person is unlawful unless it is reasonable and moderate and is authorized in advance by the child's parent or guardian for purposes of restraining or correcting the child.

The following actions are presumed unreasonable when used to correct or restrain a child: (1) Throwing, kicking, burning, or cutting a child; (2) striking a child with a closed fist; (3) shaking a child under age three; (4) interfering with a child's breathing; (5) threatening a child with a deadly weapon; or (6) doing any other act that is likely to cause and which does cause bodily harm greater than transient pain or minor temporary marks. The age, size, and condition of the child and the location of the injury shall be considered when determining whether the bodily harm is reasonable or moderate. This list is illustrative of unreasonable actions and is not intended to be exclusive.

(Emphasis added.)

of a child in the third degree (of E.M.D.), and one gross misdemeanor, assault of a child in the fourth degree (of A.S.). The State agreed to recommend a standard range sentence on the felony count, comprised of credit for time served, and a suspended sentence on the nonfelony count. The State's recommendation included no-contact orders as to the two victims, and the agreement contemplated sentencing on the same day that Grae-El entered his plea. Grae-El initially rejected the offer. However, the following day, after Grae-El learned that Strange wanted to accept the State's plea offer to her, he changed his plea.

On September 11, 2019, Grae-El pleaded guilty. When he was sentenced immediately thereafter, Grae-El admitted that he had "overstepped [his] boundaries as a parent, according to Washington State law." The court followed the agreed sentencing recommendation, imposed credit for time served, and entered an order releasing Grae-El.

Dubow continued to represent Grae-El after sentencing and filed two postsentencing motions on his behalf seeking to lift the no-contact order prohibiting contact with A.S. The trial court denied both motions.

In September 2020, represented by new counsel, Grae-El filed a CrR 7.8(b) motion seeking to vacate his convictions, alleging ineffective assistance of counsel during the plea process. Grae-El said that he pleaded guilty because both he and Strange faced lengthy prison sentences if convicted as charged in the amended information and he "felt tremendous pressure to spare his wife a prison sentence so that she would not lose the children." He explained that his

5

receipt of a hand-written letter from Strange encouraging him to accept the plea bargain tipped the balance in his decision-making. Nevertheless, he maintained that he would have rejected the State's offer and proceeded to trial if Dubow had (1) secured the testimony of three expert witnesses—one medical doctor and two child welfare experts—who were later retained by counsel in the dependency case and (2) showed him the photographs taken during the children's medical examinations.

In his supporting declaration, Grae-El averred that the experts' testimony would have resulted in dismissal of the criminal charges or acquittal at trial. He claimed that he would have been "better able to assess the case for the purpose of plea bargaining" with the benefit of the expert opinions and declared that he "certainly would not have entered a guilty plea had we had these experts available for trial." Grae-El also claimed that if counsel had shown him the photographs from the medical examinations, he "would have been even more convinced to [go] forward with the trial."

Grae-El supplied the reports of Dr. Steven Gabaeff, Sonja Ulrich, and Stephen Wilson in support of his motion. Dr. Gabaeff reviewed the medical examination photographs and did not agree that they showed bruising, abrasions, lacerations, or a black eye. Dr. Gabaeff called these characterizations "inaccurate and inflammatory." He opined that the photos depicted, at most, "minor and temporary marks," indicative of "transient pain" that were consistent with "accident," "normal childhood activity," and "legal disciplinary tactics." Dr. Gabaeff asserted that there was "no abuse in this case."

6

Social workers Sonja Ulrich and Stephen Wilson evaluated CPS's intake process and investigation involving Grae-El's children. Both reports identified "questionable practices" in the initial intake process and concluded that CPS's investigation was unnecessarily "escalated" and otherwise affected by bias.

The trial court held a two-day evidentiary hearing. Dr. Gabaeff, Ulrich, and Wilson testified consistently with their reports. Both Grae-El and Dubow testified about the plea negotiations and Dubow testified about his trial preparation and strategy for the case. At the conclusion of the hearing, the court denied the motion. The court later entered detailed findings and conclusions, and determined that Grae-El failed to establish that his counsel's representation during the plea process was constitutionally inadequate. In particular, the court determined that none of the identified expert witnesses would have necessarily been helpful to the defense and that counsel's plan to rely on the statutory reasonable parental discipline defense was reasonable under the circumstances.[6] Grae-El appeals.

II

Under CrR 7.8(b)(5), a court may grant relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment." Grae-El's motion was premised on ineffective assistance of counsel, which can provide the

---

[6] The trial court also specifically found that Dubow reviewed photographs of the children's injuries with Grae-El prior to his plea and rejected Grae-El's testimony to the contrary as "not credible." Grae-El does not challenge this finding and abandons his claim of ineffective assistance based on the alleged failure to review photographs. See State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994) (unchallenged factual findings are verities on appeal).

basis for vacating a judgment under CrR 7.8(b)(5). State v. Gomez Cervantes, 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), provides the governing standard for claims of ineffective assistance of counsel during the plea process. State v. Stowe, 71 Wn. App. 182, 186, 858 P.2d 267 (1993). A defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him. Strickland, 466 U.S. at 687. In the context of a guilty plea, constitutionally adequate assistance requires that counsel substantially assist the defendant in deciding whether to plead guilty. State v. McCollum, 88 Wn. App. 977, 982, 947 P.2d 1235 (1997).

"To combat the biases of hindsight, our scrutiny of counsel's performance is highly deferential and we strongly presume reasonableness." In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). "For many reasons . . . the choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment." State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). The presumption of reasonableness may be overcome only if, under the circumstances of the case, there was no conceivable

tactical reason for counsel's decisions. State v. Grier, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011).

When analyzing prejudice in the context of plea negotiations, the focus is on whether the alleged deficient conduct "affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; State v. Buckman, 190 Wn.2d 51, 62, 409 P.3d 193 (2018). A bare assertion that the defendant would not have pleaded guilty but for the alleged deficiency is insufficient to establish prejudice. In re Pers. Restraint of Elmore, 162 Wn.2d 236, 254, 172 P.3d 335 (2007).

We review de novo a trial court's denial of a motion to withdraw a guilty plea that is based on ineffective assistance of counsel. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010). But where a trial court weighs evidence following a CrR 7.8 hearing, we review its factual findings for substantial evidence. State v. Macon, 128 Wn.2d 784, 799, 911 P.2d 1004 (1996); State v. Ieng, 87 Wn. App. 873, 877, 942 P.2d 1091 (1997). Substantial evidence exists when the record contains sufficient evidence to persuade a "'fair-minded, rational person that the declared premise is true.'" In re Pers. Restraint of Davis, 152 Wn.2d 647, 679-80, 101 P.3d 1 (2004) (quoting Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 112, 937 P.2d 154, 943 P.2d 1358 (1997)). We defer to the trial court on issues of conflicting testimony, credibility of witnesses, and the

persuasiveness of the evidence.  State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

III

Grae-El contends that counsel's performance was constitutionally inadequate because Dubow failed to unearth and consult with expert witnesses who could have testified about the nature and extent of the children's injuries and flaws in CPS's investigation.

The State was prepared to proceed to trial on the second amended information, which required proof that Grae-El negligently inflicted "bodily harm" on A.S. (Count 1); that he "recklessly" inflicted "substantial bodily harm" on E.M.D. (Count 3); and he caused "bodily harm" to both A.S. and E.M.D. that was "greater than transient pain or minor temporary marks," and had engaged in a "pattern or practice" of (1) assaulting the child, or (2) causing physical pain or agony equivalent of torture (Counts 4 and 5).  See RCW 9A.36.140 (assault of a child in the third degree); RCW 9A.36.031(1)(d) (assault in the third degree by means of weapon or instrument); RCW 9A.36.130(1) (assault of a child in the second degree); RCW 9A.36.021(1)(a) (assault in the second degree by means of inflicting substantial bodily harm).  "[B]odily harm" means "physical pain or injury, illness, or an impairment of [a] physical condition."  RCW 9A.04.110(4)(a). And "[s]ubstantial bodily harm" means "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."  RCW 9A.04.110(4)(b).  Serious bruising can

constitute substantial bodily harm if there is sufficient evidence of substantial, but temporary, disfigurement. State v. Hovig, 149 Wn. App. 1, 13, 202 P.3d 318 (2009).

According to Grae-El, the nature and seriousness of the children's injuries would have been "key issues" at trial and, therefore, Dubow's failure to seek out a medical expert to rebut the State's evidence necessarily shows that his investigation and preparation were inadequate. But again, there are "countless" ways to provide constitutionally adequate assistance. Strickland, 466 U.S. at 689. Generally, "the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel." State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). In particular, deficient performance based on a failure to call an expert witness is limited to circumstances where "the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." Harrington v. Richter, 562 U.S. 86, 106, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). It is a rare case in which the "wide range" of reasonable professional assistance is reduced to a single approach. Strickland, 466 U.S. at 689; Richter, 562 U.S. at 106.

This is not such a case. As is often true, there are "any number of hypothetical experts" whose "insight might possibly have been useful" to the defense. Richter, 562 U.S. at 107. On the other hand, as the trial court found, expert testimony was not required for the defense to make the case that the photos showed nothing more than minor and transient marks referenced in the

discipline defense statute. The jury would have been able to evaluate the photographs to determine whether they showed visible injuries, and the medical personnel who authored the report would have been subject to cross-examination. The reasonableness of physical discipline is a factual question for the jury to resolve. See State v. Birge, 16 Wn. App. 2d 16, 34, 478 P.3d 1144 (2021) (trier of fact could conclude that it was unreasonable to hit a nine-year-old child with a belt more than 20 times hard enough to leave bruises). Consequently, Dr. Gabaeff's opinions that no abuse occurred and that Grae-El employed reasonable discipline would have been of limited value, especially since Dr. Gabaeff reviewed none of the children's forensic interviews, the defense interviews, or the prior trial testimony. As the trial court determined, Dr. Gabaeff's testimony "would not have been helpful at the criminal trial or likely affected its outcome."

Nor was it necessary to consult with child welfare experts in order to defend against the charges. As the trial court noted, because the dependency involves a unique framework and different standards, Wilson's and Ulrich's assessments of CPS's practices would have been largely irrelevant in the criminal case. Yet, Grae-El asserts that because both experts raised concerns that some of the children were initially interviewed in the presence of siblings, their testimony would have established that the children's statements to multiple professionals were "improperly tainted." But neither expert testified that the children's statements were tainted and, not having reviewed the children's forensic interviews, neither was in a position to evaluate the children's

12

statements. The failure to consult experts would not have precluded cross-examination about the interview process or any challenges to the reliability of the children's statements. The record supports the trial court's finding that none of the testimony Grae-El presented in support of his motion would have been necessarily admissible or helpful at trial.

And even assuming that the identified experts were available to the defense at the time of the plea and their testimony could have supported Grae-El's proposed defense, it does not follow that Dubow's plan to defend against the assault charges without the benefit of expert testimony was outside of the "range of legitimate decisions." Strickland, 466 U.S. at 689. Whether certain evidence could have conceivably strengthened the defense is not the applicable standard. Indeed, the purpose of the Sixth Amendment is not to "improve" the performance of constitutionally adequate counsel. Strickland, 466 U.S. at 689. Counsel's obligation is not to consult every potentially useful witness but, rather, to formulate a strategy that is "reasonable at the time" and "balance[s] limited resources in accord with effective trial tactics." Richter, 562 U.S. at 107.

IV

Grae-El argues that Dubow focused on the rape charge, and as a result, had no strategy to defend against the assault charges. And to the extent Dubow determined that no expert testimony was necessary, Grae-El claims that he failed to account for the possibility that the jury might reject his reasonable discipline defense and might conclude that he was responsible for the more serious injuries observed by hospital staff.

13

Counsel's approach was to first address the rape charge because Grae-El faced the most serious penalty for that charge. See RCW 9A.44.073(2) (first degree rape of a child is a class A felony); RCW 9.94A.507(1)(a)(i) (indeterminate sentencing provisions apply to conviction of rape of a child in the first degree). Dubow successfully moved to sever the rape count, retained an expert witness to evaluate some of the forensic interviews, and his advocacy resulted in acquittal following a jury trial. This strategy was reasonable and clearly not prejudicial to Grae-El.

The record belies Grae-El's claim that counsel lacked a strategy for the remaining assault charges. He acknowledges that the "focus" of Dubow's planned defense was to assert reasonable and moderate discipline. Dubow anticipated that Grae-El would testify at trial in accordance with his prior testimony, and that testimony was "consistent with the statutory defense." According to Dubow, Grae-El would also deny causing some of the allegedly more serious injuries. The children's statements about roughhousing among themselves would support this strategy. Counsel also said that he engaged in strategic discussions with Grae-El about whether to request lesser included offense instructions as to some counts and ultimately decided against it. Dubow testified that since the photographs depicted no more than bruising and scratches, he did not believe the "level of injury was going to be a huge issue for the jury."

The record supports the court's finding that Dubow's strategy was reasonable in light of the facts. Given the evidence of the "relatively minor nature

of the marks and bruises on the children," assertion of the statutory defense was a "viable" tactic. It was within the realm of sound trial strategy to pursue defenses that did not involve expert testimony.

V

Independently fatal to his claim, Grae-El fails to demonstrate prejudice. Grae-El's assertion that he would have rejected the State's plea offer if counsel had consulted experts is contrary to the record.

In the declaration supporting his motion, Grae-El candidly acknowledged that he pleaded guilty after he received Strange's hand-written letter encouraging him to accept the plea offer, and that he later regretted that decision. At the hearing on his motion, Grae-El testified to the following additional details. In the 10 months he was incarcerated pending trial, he had rejected several plea offers. Grae-El said he was determined to go to trial and, in fact, had instructed Dubow not to communicate any further offers made by the prosecutor. But then, in the middle of jury selection, Grae-El learned that Strange would have to go to trial if he rejected the State's final plea offer and that she would be sentenced to a term of incarceration, if convicted. Grae-El felt "enormous" pressure to avoid this outcome. He had grave concerns about the implications for his family if both he and his wife went to trial, with both facing the risk of significant sentences.[7]

Grae-El said that although counsel communicated his wife's wishes, he needed to hear directly from her. Dubow then brought him a letter from Strange.

_____

[7] If Grae-El had been convicted of a single count of assault of a child in the second degree, with an offender score of two, he would have been subject to a standard range of 41-54 months. See RCW 9.94A.515; RCW 9.94A.510.

15

Grae-El testified that the letter said: "take this deal. We'll bounce through it. My charges will be gone in two years." According to Grae-El, Strange "was basically telling me that this is a minor setback for a major comeback" and Grae-El had "no question in [his] mind" that Strange had written the letter. Grae-El testified that even though he believed he would be exonerated at trial and felt that his conduct was "entirely" within the bounds of reasonable discipline, he could not be responsible for the potential consequences to Strange of foregoing the plea. He explained that, "as much as I felt of my innocence, I wanted to protect her." Grae-El admitted that, but for the contingent nature of the plea offers, he would have been willing to assume the risks of trial: "if that contingency clause was not there, we could have trialed it out without expert witnesses."

There was no testimony at the hearing that Dubow advised Grae-El to accept the plea offer. Dubow testified that he reviewed the terms of the offer with Grae-El. Dubow believed that the testimony in the first trial provided a clear "avenue" for the defense, but informed Grae-El that trial always entails risk and there was a significant chance of being convicted of some crime. Grae-El's dependency attorney was also present during the discussions to advise him of consequences related to the dependency. Dubow said that the contingent nature of the plea agreements did not figure in to his advice, because the impact on Strange was something only the defendant could weigh. There is nothing in the record to suggest that the expert reports Grae-El relied on would have affected Dubow's advice.

Dubow testified that Grae-El was adamant that his conduct was lawful and he was "very close to certain" that Grae-El would not have changed his plea if Strange's plea offer had not been dependent on his. The trial court found that Grae-El's change of plea was related to several factors: "withering" confidence in the judicial system, his months-long separation from his wife and children, the knowledge that his wife would face trial and a potential prison sentence if he rejected the plea offer, and his desire to protect her interests in this case and in the pending dependency. The testimony in the record supports this finding.

Despite his present contrary assertion, it is abundantly clear that Grae-El changed his plea based on factors wholly unrelated to Dubow's performance or his assessment of the State's evidence. The evidence, including Grae-El's own unequivocal statements, demonstrate that what mattered most to him at the time of the plea was that, given the contingent nature of the plea offers, accepting the State's offer was the only way he could protect Strange from a prison sentence and potentially serious repercussions in the dependency case. To put a finer point on it, what Grae-El is now seeking is not a return to the position he was in before he accepted the State's offer. See In re Pers. Restraint of Thompson, 141 Wn.2d 712, 730, 10 P.3d 380 (2000) (withdrawal of plea allows both parties to start over and places them "back in the position they were in before they entered into the agreement"). Instead, he seeks a deal that was not on the table at the time of his plea: the ability to take his case to trial and for Strange to take advantage of a favorable, noncontingent offer that eliminated her risks in the criminal matter and the dependency.

Grae-El establishes neither deficient performance nor prejudice. His claim of ineffective assistance of counsel fails. The trial court did not err in denying his motion to vacate.

VI

In a statement of additional grounds for relief, Grae-El asserts that the trial court judge harbored bias against him because of his race and disapproval of his approach to discipline. He relies on the court's statement at sentencing that forcing young children to hold physically challenging positions as punishment is inappropriate and its denial of postsentencing motions to lift the no-contact order as to A.S. He also points to the trial court's failure to be persuaded by his proffered expert testimony. But the only order before this court on review is the order denying the CrR 7.8 motion, not the judgment and sentence or orders denying motions to lift the no-contact order.[8] More fundamentally, there is simply nothing in the court's rulings or statements to indicate personal bias. See Davis, 152 Wn.2d at 692 ("Judicial rulings alone almost never constitute a valid showing of bias.").

In his motion below, Grae-El asserted that the State filed excessive charges in order to coerce him and Strange into pleading guilty. On appeal, he claims the trial court erred by allowing the State, with "miniscule supporting evidence," to add more assault charges after his acquittal on the rape charge.

---

[8] Those orders do not appear to be final orders under RAP 2.2 or other orders specifically designated under that rule. As such, they would be subject only to discretionary review under RAP 2.3.

CrR 2.1(d) allows amendment of the information "any time before verdict or finding if substantial rights of the defendant are not prejudiced." The defendant bears the burden of showing prejudice. State v. Brooks, 195 Wn.2d 91, 101, 455 P.3d 1151 (2020). This court reviews a decision to grant a motion to amend an information for abuse of discretion. Brooks, 195 Wn.2d at 96.

Here, the State moved to amend the information before the second trial. Grae-El's counsel conceded appropriate notice of the proposed amendments. Counsel nonetheless objected, asserting a lack of factual basis for the torture prong of assault of a child in the second degree, as charged in Counts 4 and 5. See RCW 9A.36.130(1)(b)(ii) (requiring proof of a pattern or practice of "causing the child physical pain or agony that is equivalent to that produced by torture").[9] The trial court allowed the amendment, ruling that based on the evidence presented at the trial on the rape charge, there was an adequate factual basis for the charges. At the same time, the court stated that the issue could be raised again after the presentation of the State's evidence.

Grae-El does not allege lack of notice, and cannot show prejudice in view of the court's willingness to revisit its decision if the evidence did not support the added charges. The trial court did not abuse its discretion in allowing the amendment.

---

[9] Strange's counsel did not object.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____        Andrus, A.C.J.